E1096 - E77

IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO
CIVIL DIVISION

**Kimberly Six-Likens**
2432 Beverly Hills Drive.
Lancaster, Ohio 43130

Plaintiff,

v.

**DaVita Columbus Dialysis**
3830 Olentangy River Rd.
Columbus, OH 43214

Defendant.

**Case No.** 11 CV H 06 7378

**Judge:**

**Jury Demand Endorsed Hereon**

FILED
COMMON PLEAS COURT
FRANKLIN CO. OHIO
2011 JUN 16 AM 10: 19
CLERK OF COURTS-CV

## COMPLAINT

1. This Court has subject matter jurisdiction over this action because it involves a question of Ohio law. Personal jurisdiction and venue are proper. All the events pertinent to the complaint arose in the State of Ohio, County of Franklin.

2. Ms. Kimberly Six-Likens, hereinafter also "Plaintiff", is a resident of the State of Ohio, Fairfield County and was at all times relevant hereto, an employee of the Defendant DaVita Columbus Dialysis, hereinafter "DCD". Plaintiff performed her duties competently and in acceptable manner while an employee.

3. DCD was, at all times relevant hereto, the employer of the Plaintiff.

4. DCD is an Ohio corporation subject to the laws of the State of Ohio and the laws of the United States.

5. Plaintiff worked as a Registered Nurse for DCD from August 1, 2008 to March 8, 2010. Plaintiff's compensation at the time of her termination was approximately $75,000.00 per year in wages and had additional paid benefits.

16

am

EXHIBIT 1

E1096 - E78

6. On March 20, 2009, a consent decree was finalized between Ms. Six-Likens and the Ohio Board of Nursing. This decree set out in scrupulous detail the history of sanctionable conduct, some predating Plaintiff's employment with DCD, along with the obligations of Ms. Six-Likens to maintain her active practice of nursing. [Exhibit 1] This was the result of the Board's decision to suspend Ms. Six-Likens' nursing license indefinitely, subject to stay by strict adherence to the 10-page consent decree.

7. Ms. Six-Likens was required to, and did, provide a full copy to DCD of the consent decree within 15 days of the effective date of March 20, 2009.

8. The Defendant, DCD was required to, and did, submit written reports to the Board of Nursing regarding job performance on a quarterly basis. DCD made no report of any performance or any other conduct issues on behalf of Ms. Six-Likens since the inception of the consent decree. DCD approved Ms. Six-Likens for raises and bonuses.

9. Ms. Six-Likens was required to call in daily to an independent drug-testing lab to be advised if she would be required to report that day for a random drug screening. Plaintiff fully complied with this requirement of the consent decree.

10. Plaintiff remained one hundred percent compliant with all terms and conditions of employment as well as the consent decree during her continued employment. Plaintiff had no discipline, warnings or attendance issues from the time she signed the consent decree during her remaining 6 months of employment.

11. On or about August 1, 2009, Plaintiff was terminated. The only reason ever provided to Ms. Six-Likens was that she was "a liability".

**COUNT ONE. Violation of Ohio Revised Code §4112.02 and §4112.99 disability discrimination *denial of reasonable accommodation.***

12. Plaintiff realleges paragraphs one through 11 as if fully recited herein.

E1096 - E79

13. Plaintiff suffers from a disabilities, including chemical dependency, that limit one or more of her major life activities, including her ability to practice nursing care because of a physical or mental disability pursuant to ORC§4723.28(B)(4).

14. Plaintiff is able to perform her duties fully and competently when reasonably accommodated.

15. On March 20, 2009, Plaintiff requested a reasonable accommodation that permitted her to remain employed. This accommodation was in the form of a consent decree signed by the Plaintiff and the Ohio Board of Nursing. Defendant DCD accepted this decree as the terms and conditions of Ms. Six-Liken request for accommodation to remain employed by the Defendant.

16. On August 1, 2009, the Defendant denied Plaintiff the reasonable accommodation of working under the consent decree and separated Plaintiff from employment.

17. The deciding factor for Defendant DCD to separate the Plaintiff and deny her a reasonable accommodation was Plaintiff's disability.

18. Plaintiff states a cause of action for violation of Ohio Revised Code §4112.02 and §4112.99 Disability discrimination for failure to reasonably accommodate.

19. The Plaintiff has suffered injury because of the Defendant's conduct.

**COUNT TWO. Violation of Ohio Revised Code §4112.02 and §4112.99 disability discrimination *"regarded as" perception of disability.***

20. Plaintiff realleges paragraphs one through 19 as if fully recited herein.

21. Plaintiff suffers from a disabilities, including chemical dependency, that limit one or more of her major life activities, including her ability to practice nursing care because of a physical or mental disability pursuant to ORC§4723.28(B)(4).

E1096 - E80

22. Plaintiff is able to perform her duties fully and competently when reasonably accommodated.

23. At the time of her termination, Ms. Six Likens had a physical or mental impairment that substantially limits major life activities but only as a result of the attitudes of others toward such impairment that Ms. Six-Likens' chemical dependency made her "a liability" despite the fact she was fully compliant with abstinence and sobriety requirement of her employer and the Ohio Board of Nursing.

24. The deciding factor for Defendant DCD to separate the Plaintiff and deny her a reasonable accommodation was Defendant DCD' perception of Plaintiff's disability.

25. Plaintiff states a cause of action for violation of Ohio Revised Code §4112.02 and §4112.99 Disability discrimination for regarding Plaintiff as disabled.

26. The Plaintiff has suffered injury because of the Defendant's conduct.

**COUNT THREE. PROMISSORY ESTOPPEL**

27. Plaintiff realleges paragraphs one through 26 as if fully recited herein.

28. DCD represented to Plaintiff that if Plaintiff met the expectations of the consent decree she would be permitted to continue employment during good service.

29. In reliance upon DCD's representations, Plaintiff acted in a manner that she believed was consistent with DCD's stated expectations and the consent. Plaintiff was not advised at anytime during her continued employment that she was not conforming to the consent decree or that she was not meeting expectations. As a result of not being advised she was not meeting expectations, Plaintiff continued to conduct herself, to her detriment, in a manner she believed was consistent with DCD's expectations and not present herself as "a liability".

E1096 - E81

30. As a result of DCD's representations, Plaintiff changed her position to her detriment by following all performance criteria given to her and was then terminated for having followed that criteria and has suffered damages. Plaintiff states a cause of action for Promissory Estoppel.

**Wherefore** the Plaintiff prays that this Court:

31. Award Plaintiff injunctive relief of reinstatement to her position as if Plaintiff's employment had been continuous from her last date of employment on August 1, 2009 to the date of reinstatement;

32. Award Plaintiff all back pay and the value of all benefits as if Plaintiff's employment had been continuous from her last date of employment on August 1, 2009, including actual costs suffered by Plaintiff, in an amount in excess of $25,000.00 to be proven at trial;

33. Award Plaintiff all actual and proximately caused monetary damages, compensatory damages for emotional distress and costs caused by Defendant DCD;

34. Award Plaintiff all remedies available under ORC §4112.02/99 including back pay, front pay, compensatory and punitive damages and all costs.

35. Award Plaintiff prejudgment interest and post-judgment interest on all amounts awarded;

36. Any other relief or combination of requested relief as the Court may determine to be just and equitable.

Respectfully submitted,

Daniel H. Klos (0031294)
4591 Indianola Avenue
Columbus, Ohio 43214
Voice (614 261-9581
Fax (614 262-5732
Email klosdhesq@aol.com
Attorney for Plaintiff

E1096 - E82

**JURY DEMAND**

Plaintiff hereby demands a trial to a jury on all matters triable to a jury.

Respectfully submitted,

Daniel H. Klos (0031294)
4591 Indianola Avenue
Columbus, Ohio 43214
Voice (614 261-9581
Fax (614 262-5732
Email klosdhesq@aol.com
Attorney for Plaintiff

E1096 - E83

Case # 08-1334



Ohio Board of Nursing www.nursing.ohio.gov

17 South High Street, Suite 400 • Columbus, Ohio 43215-7410 • (614) 466-3947




**CONSENT AGREEMENT
BETWEEN
KIMBERLY A. SIX-LIKENS, R.N.
AND
OHIO BOARD OF NURSING**

This Consent Agreement is entered into by and between **KIMBERLY A. SIX-LIKENS, R.N. (MS. SIX-LIKENS)** and the Ohio Board of Nursing (Board), the state agency charged with enforcing Chapter 4723. of the Ohio Revised Code (ORC), and all administrative rules promulgated thereunder.

**MS. SIX-LIKENS** voluntarily enters into this Consent Agreement being fully informed of her rights under Chapter 119, ORC, including the right to representation by legal counsel and the right to a formal adjudicative hearing on the issues considered herein.

This Consent Agreement contains the entire agreement between the parties, there being no other agreement of any kind, verbal or otherwise, which varies the terms of this Consent Agreement.

**BASIS FOR ACTION**

This Consent Agreement is entered into on the basis of the following stipulations, admissions and understandings:

A. The Board is empowered by Section 4723.28, ORC, to deny, permanently revoke, revoke, suspend, or place restrictions on any license issued by the Board; reprimand or otherwise discipline a licensee; or impose a fine of five hundred dollars ($500.00) or less per violation. Section 4723.28(G) of the Ohio Revised Code authorizes the Ohio Board of Nursing to compel a licensee to submit to a mental or physical examination, or both, as required by the Board and at the expense of the individual, if the Board finds reason to believe that the individual under investigation may have a physical or mental impairment that may affect the individual's ability to provide safe nursing care. Section 4723.28(B)(10), ORC, authorizes the Board to discipline a licensee for impairment of the ability to practice according to acceptable and prevailing standards of safe nursing care because of habitual or excessive use of drugs, alcohol, or other chemical substances that impair the ability to practice. Section 4723.28(B)(11), ORC, authorizes the Board to discipline a licensee for impairment of the ability to practice according to acceptable and prevailing standards of safe

nursing care because of a physical or mental disability. Section 4723.28(B)(4), ORC, authorizes the Board to discipline a licensee for conviction of, a plea of guilty to, a judicial finding of guilt of, a judicial finding of guilt resulting from a plea of no contest to, or a judicial finding of eligibility for intervention in lieu of conviction for, any felony or of any crime involving gross immorality or moral turpitude. Section 4723.28(B)(16), ORC, authorizes the Board to discipline a licensee for violation of Chapter 4723, ORC, or any rules adopted under it. Specifically, Ohio Administrative Code (OAC), Rule 4723-4-06(P), states that a licensed nurse shall not submit or cause to be submitted any false, misleading, or deceptive statements, information, or documentation to the board, to current employers, or to any future employers for positions requiring a nursing license.

B. **MS. SIX-LIKENS** has been licensed to practice nursing as a registered nurse, RN-285180 in the State of Ohio since 1999.

C. **MS. SIX-LIKENS** knowingly and voluntarily admits to the following:

i. On or about June 4, 2008, **MS. SIX-LIKENS** was interviewed by a Board Compliance Agent (Board Agent) regarding her nursing practice, including but not limited to her recent resignation from employment at Interim Health Care. When handed a copy of the handwritten resignation signed by **MS. SIX-LIKENS**, she stated she had never seen it. When **MS. SIX-LIKENS** was asked if she had any mental health issues, any criminal convictions, or any law enforcement issues, she stated she did not. **MS. SIX-LIKENS** was re-interviewed by the Board Agent on September 10, 2008, and was asked specifically whether she had any convictions, legal actions, or matters involving the law in Lancaster, or Fairfield county, and she stated, "no." **MS. SIX-LIKENS** was asked if she was on probation, and she stated "no, absolutely not." **MS. SIX-LIKENS** was asked if she knew Jenni Rhymer, and she stated, "no."

ii. Despite **MS. SIX-LIKENS**'s statements to the Board Agent on June 4 and September 10, 2008, **MS. SIX-LIKENS** had multiple matters involving law enforcement, and/or criminal charges in the city of Lancaster and/or in Fairfield county, Ohio. In addition, **MS. SIX-LIKENS** was on probation at the time the Board Agent spoke to her, her probation officer informed the Board that she had been monitoring **MS. SIX-LIKENS**, and **MS. SIX-LIKENS** knew the probation officer. **MS. SIX-LIKENS**'s matters involving law enforcement include, but are not limited to the following:

a. On or about December 17, 2006, **MS. SIX-LIKENS**'s vehicle was stopped by the Ohio State Highway Patrol in Fairfield County at approximately 8:15 pm for leaving the roadway. According to the

officer's report. **MS. SIX-LIKENS** was "very belligerent, screaming very loudly, and combative . . . ".

b. On or about June 20, 2007, in Fairfield Municipal Court case No. TRC 0612352A, **MS. SIX-LIKENS** pled guilty and was convicted of DUI and ordered to mental health counseling, peaceful contact with family members, alcohol/drug abstinence, and two (2) years probation.

c. On April 21, 2006, in Fairfield County Municipal Court cases No. CRB 0501954A and B, **MS. SIX-LIKENS** was convicted of Receiving Stolen Property, a first-degree misdemeanor in violation of Section 2913.51, ORC, and Resisting Arrest, a second-degree misdemeanor in violation of Section 2921.33, ORC. The events underlying this case occurred on or about August 23, 2005, when **MS. SIX-LIKENS** was arrested at her home by Lancaster Police after being observed stealing clothing from a Dollar General store. **MS. SIX-LIKENS** became combative with the police officer. The Court ordered **MS. SIX-LIKENS** to probation, a mental health evaluation, an alcohol/drug assessment, and banned her from the Dollar General store for two (2) years. **MS. SIX-LIKENS** was placed on house arrest for violating probation effective August 1, 2006 and ordered to have no contact with her spouse or children. On October 19, 2006, **MS. SIX-LIKENS's** probation was extended for two (2) years and she was ordered to comply with mental health counseling.

d. On or about October 19, 2006, in Fairfield County Municipal Court Case No. CRB 0601777, **MS. SIX-LIKENS** was charged with Negligent Assault, a third-degree misdemeanor, and found guilty of a lesser charge. **MS. SIX-LIKENS** was ordered by the Court to a mental health evaluation, compliance with counseling recommendations, an alcohol/drug assessment, and two (2) years probation.

e. On or about May 5, 2005, in Fairfield Municipal Court case No. CRB 0402021, **MS. SIX-LIKENS** was charged with Disorderly Conduct, a fourth-degree misdemeanor, and found guilty of a reduced charge.

f. On or about May 17, 2007, in Fairfield County Municipal Court, Cases CRB 070166A & B, **MS. SIX-LIKENS** was charged with Menacing, a fourth-degree misdemeanor. This case was dismissed upon your agreement to pay restitution to the victim.

iii. On December 10, 2008, the Board ordered **MS. SIX-LIKENS** to a psychiatric examination. **MS. SIX-LIKENS** complied and was examined by Dr. Sokolov on January 29, 2009. Dr. Sokolov submitted a written report to the Board indicating that **MS. SIX-LIKENS** has a history of Recent Opioid Dependence and that her continued nursing practice should be conditioned on mental health and chemical dependency treatment and Board monitoring. Specifically, Dr. Sokolov recommended that **MS. SIX-LIKENS** engage in combined substance abuse/mental health treatment with a skilled clinician, qualified in treating both, at least twice per month for at least one year, and that **MS. SIX-LIKENS** attend Narcotics Anonymous or a similar support group on a monthly basis, and participate in random urine screens, for at least two (2) years.

**AGREED CONDITIONS**

Wherefore, in consideration of the foregoing and mutual promises hereinafter set forth, and in lieu of any formal proceedings at this time, **MS. SIX-LIKENS** knowingly and voluntarily agrees with the Board to the following terms, conditions, and limitations: **MS. SIX-LIKENS's** license to practice nursing as a registered nurse is hereby suspended indefinitely. Such suspension is hereby stayed, subject to the following PROBATIONARY terms, conditions, and limitations until at least **March 2011**:

1. **MS. SIX-LIKENS** shall obey all federal, state, and local laws, and all laws and rules governing the practice of nursing in Ohio. **MS. SIX-LIKENS** shall comply with any terms and conditions imposed by Fairfield County Municipal Court in the criminal cases referenced in this Consent Agreement.

2. **MS. SIX-LIKENS** shall appear in person for interviews before the full Board or its designee as requested by the Board or its designee.

**Mental Health and Chemical Dependency Counseling**

3. **MS. SIX-LIKENS** shall, at her own expense, engage in mental health and chemical dependency counseling with licensed clinician experienced in treating individuals with combined mental health/substance abuse issues, who is approved in advance by the Board or its designee. **MS. SIX-LIKENS** shall continue in treatment

with the treating clinician approved in advance by the Board or its designee, until released, but for a period of not less than one (1) year from the effective date of this Consent Agreement, and shall see such clinician at least twice per month, unless otherwise recommended by the clinician and approved in advance by the Board or its designee.

4. On a quarterly basis, or as otherwise requested by the Board or its designee, beginning **May 1, 2009** until released, **MS. SIX-LIKENS** shall cause the Board approved treating clinician to submit written reports to the Board regarding: (i) **MS. SIX-LIKENS's** progress; (ii) compliance with treatment recommendations/plans; (iii) all dates **MS. SIX-LIKENS** was seen in the three (3) month period prior to the date of the report; and (iv) any concerns regarding **MS. SIX-LIKENS's** ability to practice nursing in accordance with acceptable and prevailing standards of safe nursing care. Further, **MS. SIX-LIKENS** agrees that the Board may use the treating clinician's recommendations during the course of treatment as a basis for additional terms, conditions, limitations on **MS. SIX-LIKENS's** license and that the terms, conditions, and limitations may be incorporated in an addendum to this *Consent Agreement.*

5. At the first appointment following the effective date of this Consent Agreement, **MS. SIX-LIKENS** shall provide the clinician approved in advance by the Board or its designee, with a copy of this Consent Agreement; the December 10, 2008 letter from the Board to **MS. SIX-LIKENS** ordering her to a psychiatric examination; and Dr. Sokolov's February 4, 2009 report to the Board. In addition, **MS. SIX-LIKENS** shall execute releases to permit the clinician to obtain any information deemed appropriate and necessary for their treatment and evaluation of **MS. SIX-LIKENS.**

**Monitoring of Chemical Use**

6. **MS. SIX-LIKENS** shall abstain completely from the personal use or possession of drugs, except those prescribed, administered, or dispensed to her by another so authorized by law who has full knowledge of **MS. SIX-LIKENS's** history of chemical dependency and recovery status. **MS. SIX-LIKENS** shall self-administer prescribed drugs only in the manner prescribed.

7. **Within forty-five (45) days following the effective date of this Consent Agreement, MS. SIX-LIKENS** shall begin submitting, at her expense and on the day selected, blood or urine specimens for drug and/or alcohol analysis at a collection site specified by the Board at such times as the Board may request. Refusal to submit such specimen,

or failure to submit such specimen on the day she is selected, or in such a manner as the Board may request, shall constitute a violation of a restriction placed on a license for purposes of Section 4723.28(B), ORC. This screening shall require a daily call-in process. The specimens submitted by **MS. SIX-LIKENS** shall be negative, except for substances prescribed, administered, or dispensed to her by another so authorized by law who has full knowledge of **MS. SIX-LIKENS's** history of chemical dependency and recovery status.

8. **MS. SIX-LIKENS** shall attend a minimum of one (1) meeting per week of Narcotics Anonymous, or similar support or peer group meeting approved in advance by the Board or its designee, and **MS. SIX-LIKENS** shall provide satisfactory documentation of such attendance to the Board every six (6) months.

**Treating Practitioners and Reporting**

9. **Within forty-five (45) days of the effective date of this Consent Agreement, MS. SIX-LIKENS** shall provide a copy of this Consent Agreement to all treating practitioners and shall provide to the Board a list of all treating practitioners, including addresses and telephone numbers. Further, **MS. SIX-LIKENS** shall be under a continuing duty to provide a copy of this Consent Agreement, prior to initiating treatment, to additional treating practitioners, and to update the list of treating practitioners with the Board within forty-eight (48) hours of being treated by another practitioner.

10. **Within forty-five (45) days of the effective date of this Consent Agreement, MS. SIX-LIKENS** shall cause all treating practitioners to complete a medication prescription report that is to be mailed by the practitioner directly to the Board. The medication report is to be completed for any and all substances prescribed, administered, or dispensed to **MS. SIX-LIKENS** throughout the duration of this Consent Agreement.

11. **Within twenty-four (24) hours** of release from hospitalization or medical treatment, **MS. SIX-LIKENS** shall notify the Board of any and all medication(s) or prescription(s) received.

**Employment Conditions**

12. Prior to accepting employment as a nurse, each time with every employer, **MS. SIX-LIKENS** shall notify the Board.

13. **MS. SIX-LIKENS, within fifteen (15) days of the effective date of the Consent Agreement,** if working in a position in which a nursing license is required, shall provide her employer(s) with a copy of this Consent Agreement. Further, **MS. SIX-LIKENS** is under a continuing duty to provide a copy of this Consent Agreement to any new employer prior to accepting employment. **MS. SIX-LIKENS** shall have her employer(s), if working in a position where a nursing license is required, submit written reports regarding job performance on a quarterly basis **beginning within thirty (30) days of accepting employment in a position in which a nursing license is required. MS. SIX-LIKENS** shall have her employer(s) send documentation to the Board, along with the first employer report, of receipt of a copy of this Consent Agreement, including the date the Consent Agreement was received.

**Reporting Requirements of Licensee**

14. **MS. SIX-LIKENS** shall report to the Board, in writing, any violation of this Consent Agreement within thirty (30) days of the occurrence of the violation.

15. **MS. SIX-LIKENS** shall sign release of information forms allowing health professionals and other organizations to submit the requested documentation directly to the Board.

16. **MS. SIX-LIKENS** shall submit any and all information that the Board may request regarding her ability to practice according to acceptable and prevailing standards of safe nursing practice.

17. **MS. SIX-LIKENS** shall not submit or cause to be submitted any false, misleading, or deceptive statements, information, or documentation to the Board or to employers or potential employers.

18. **MS. SIX-LIKENS** shall submit the reports and documentation required by this Consent Agreement on forms specified by the Board. All reporting and communications required by this Consent Agreement shall be made to the Compliance Unit of the Board.

19. **MS. SIX-LIKENS** shall submit the reports and documentation required by this Consent Agreement or any other documents required by the Board to the attention of the Compliance Unit, Ohio Board of Nursing, 17 South High Street, Suite 400, Columbus, OH 43215-7410.

20. **MS. SIX-LIKENS** shall verify that the reports and documentation required by this Consent Agreement are received in the Board office.

21. **MS. SIX-LIKENS** shall inform the Board within five (5) business days, in writing, of any change in employment status or of any change in residential or home address or telephone number.

**Criminal Records Check**

**MS. SIX-LIKENS** agrees that she will submit a request to the Bureau of Criminal Identification and Investigation (BCII) to conduct a criminal records check of **MS. SIX-LIKENS,** including a check of Federal Bureau of Investigation (FBI) records, and shall cause BCII to submit **MS. SIX-LIKENS's** criminal records check reports to the Board. **MS. SIX-LIKENS's** completed criminal records check, including the FBI check, **must be been received by the Board within one (1) year following the effective date of the Consent Agreement.**

**Temporary Practice Restrictions**

**MS. SIX-LIKENS** further knowingly and voluntarily agrees with the Board to the following **TEMPORARY LICENSURE RESTRICTIONS during the term of this Consent Agreement:**

**Unless otherwise approved in writing in advance by the Board or its designee, MS. SIX-LIKENS** shall not practice nursing as a registered nurse: (1) for agencies providing home care in the patient's residence; (2) for hospice care programs providing hospice care in the patient's residence; (3) for staffing agencies or pools; (4) as an independent provider where the nurse provides nursing care and is reimbursed for services by the State of Ohio through State agencies or agents of the State; or (5) for an individual or group of individuals who directly engage **MS. SIX-LIKENS** to provide nursing services for fees, compensation, or other consideration or as a volunteer.

**MS. SIX-LIKENS** shall not function in a position or employment where the job duties or requirements involve management of nursing and nursing responsibilities, or supervising and evaluating nursing practice. Such positions include but are not limited to the following: Director of Nursing, Assistant Director of Nursing, Nurse Manager, Vice President of Nursing.

**FAILURE TO COMPLY**

**MS. SIX-LIKENS** agrees that her license to practice nursing as a registered nurse will be automatically suspended if it appears to the Board that **MS. SIX-LIKENS** has violated or breached any terms or conditions of the Consent Agreement. Following the automatic suspension, the Board shall notify **MS. SIX-LIKENS** via certified mail of the specific nature of the charges and automatic suspension of her license. Upon receipt of this notice, **MS. SIX-LIKENS** may request a hearing regarding the charges.

The above described terms and conditions shall constitute "restrictions placed on a license" for purposes of Section 4723.28(B), ORC. If, in the discretion of the Board, **MS. SIX-LIKENS** appears to have violated or breached any terms or conditions of this Consent Agreement, the Board reserves the right to institute formal disciplinary proceedings for any and all possible violations or breaches, including, but not limited to, alleged violations of the laws of Ohio occurring before the effective date of this Consent Agreement.

**DURATION/MODIFICATION OF TERMS**

The terms, limitations and conditions of this Consent Agreement may be modified or terminated, in writing, at any time upon the agreement of both **MS. SIX-LIKENS** and the Board.

The Board may only alter the probationary period imposed by this Consent Agreement if: (1) the Board determines that **MS. SIX-LIKENS** has complied with all aspects of this Consent Agreement; and (2) the Board determines that **MS. SIX-LIKENS** is able to practice according to acceptable and prevailing standards of safe nursing care without Board monitoring, based upon an interview with **MS. SIX-LIKENS** and review of the reports as required herein. Any period during which **MS. SIX-LIKENS** does not work in a position for which a nursing license is required shall not count toward fulfilling the probationary period imposed by this Consent Agreement.

**ACKNOWLEDGMENTS/LIABILITY RELEASE**

**MS. SIX-LIKENS** acknowledges that she has had an opportunity to ask questions concerning the terms of this Consent Agreement and that all questions asked have been answered in a satisfactory manner.

**MS. SIX-LIKENS** waives all of her rights under Chapter 119, ORC, as they relate to matters that are the subject of this Consent Agreement.

**MS. SIX-LIKENS** waives any and all claims or causes of action she may have against the Board, and its members, officers, employees and/or agents arising out of matters that are the subject of this Consent Agreement.

This Consent Agreement shall be considered a public record as that term is used in Section 149.43, ORC. The information contained herein may be reported to appropriate organizations, data banks and governmental bodies.

This Consent Agreement is not an adjudication order within the meaning of Chapter 119, ORC. Any action initiated by the Board based on alleged violations of this Consent Agreement shall comply with the Administrative Procedures Act, Chapter 119, ORC.

**EFFECTIVE DATE**

**MS. SIX-LIKENS** understands that this Consent Agreement is subject to ratification by the Board prior to signature by the Board President and shall become effective upon the last date of signature below.

Kimberly Six-Likens
**KIMBERLY A. SIX-LIKENS, R.N.**

2/24/09
**DATE**

**JOHN M. SNIDER, ESQ.** 0024287
**ATTORNEY FOR KIMBERLY A. SIX-LIKENS, R.N.**

2/24/09
**DATE**

Lisa Klenke, MSN, RN
**LISA KLENKE, President**
**Ohio Board of Nursing**

3·20·09
**DATE**

E1096 - E93

MARYELLEN O'SHAUGHNESSY
CLERK OF THE FRANKLIN COUNTY COMMON PLEAS COURT, COLUMBUS, OHIO 43215
CIVIL DIVISION

JUDGE M. SERROTT

KIMBERLY SIX-LIKENS,

PLAINTIFF,

11CVH-06-7378

VS.

DAVITA COLUMBUS DIALYSIS,

DEFENDANT.

FILED
COMMON PLEAS COURT
FRANKLIN CO. OHIO
2011 JUN 16 AM 10: 20
CLERK OF COURTS-CV

CLERK'S ORIGINAL CASE SCHEDULE

| | LATEST TIME OF OCCURRENCE |
|---|---|
| CASE FILED | 06/16/11 |
| INITIAL STATUS CONFERENCE | ******** |
| INITIAL JOINT DISCLOSURE OF ALL WITNESSES | 11/03/11 |
| SUPPLEMENTAL JOINT DISCLOSURE OF ALL WITNESSES | 12/29/11 |
| TRIAL CONFIRMATION DATE | 01/12/12 |
| DISPOSITIVE MOTIONS | 03/22/12 |
| DISCOVERY CUT-OFF | 04/05/12 |
| DECISIONS ON MOTIONS | 05/17/12 |
| FINAL PRE-TRIAL CONFERENCE/ORDER (OR BOTH) | ******** |
| TRIAL ASSIGNMENT | 06/14/12 0900AM |

NOTICE TO ALL PARTIES

ALL ATTORNEYS AND PARTIES SHOULD MAKE THEMSELVES FAMILIAR WITH THE COURT'S LOCAL RULES, INCLUDING THOSE REFERRED TO IN THIS CASE SCHEDULE. IN ORDER TO COMPLY WITH THE CLERK'S CASE SCHEDULE, IT WILL BE NECESSARY FOR ATTORNEYS AND PARTIES TO PURSUE THEIR CASES VIGOROUSLY FROM THE DAY THE CASES ARE FILED. DISCOVERY MUST BE UNDERTAKEN PROMPTLY IN ORDER TO COMPLY WITH THE DATES LISTED IN THE RIGHT-HAND COLUMN.

BY ORDER OF THE COURT OF COMMON PLEAS,
FRANKLIN COUNTY, OHIO

__/__/__
DATE

MARYELLEN O'SHAUGHNESSY, CLERK

(CIIJMA-S10)